**SIGNED THIS: April 21, 2008**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| DONALD BLADES MINICH and | ) | |
| MELISSA JOANNE MINICH, | ) | Case No. 05-74003 |
| | ) | |
| Debtors. | ) | |
| | | |
| In Re | ) | |
| | ) | In Bankruptcy |
| CONNIE S. COLCORD, | ) | |
| | ) | Case No. 05-75139 |
| Debtor. | ) | |
| | | |
| In Re | ) | |
| | ) | In Bankruptcy |
| WILLIAM JAMES CLAYTON and | ) | |
| KATHLEEN LOUISE CLAYTON, | ) | Case No. 05-75777 |
| | ) | |
| Debtors. | ) | |
| | | |
| In Re | ) | |
| | ) | In Bankruptcy |
| JEFFREY A. HOWELL and | ) | |
| JULIE A. HOWELL, | ) | Case No. 05-76742 |
| | ) | |
| Debtors. | ) | |

-1-

```
In Re                        )
                             )    In Bankruptcy
THOMAS JOHN RENNER,          )
                             )    Case No. 05-78254
          Debtor.            )

In Re                        )
                             )    In Bankruptcy
CHRISTOPHER L. COWAN and     )
AMY K. COWAN,                )    Case No. 06-70466
                             )
          Debtors.           )

In Re                        )
                             )    In Bankruptcy
STEVEN W. DAVIS,             )
                             )    Case No. 06-71158
          Debtor.            )
```

# **O P I N I O N**

Before the Court are seven Final Reports and Accounts filed by three different Chapter 7 trustees. In each case, the Chapter 7 Trustee filed an Application for Compensation for the Trustee's attorneys fees and costs for himself or his firm with his Final Report and Account and, in each case, he incorporated the anticipated payment of all of the requested attorney fees and costs in his proposed distribution. Having reviewed all of the Applications for Compensation, this Court finds that none of the Applications fully comply with established guidelines for the allowance of professional fees. Accordingly, in each case, the Trustee will be given an opportunity to file an amended fee application.

In In re Minich (05-74003), the Trustee has requested fees in

the amount of $3,173 for services as his own attorney. The Application states that the Trustee's attorney rendered legal services in two adversary proceedings to sell real estate and in one adversary to collect a preference. In the Application, the adversary cases are described only by number - not by the names of the parties involved. Attached to the Application is a billing statement for the period of October 9, 2005, through July 15, 2007. The billing statement contains a chronological listing of the attorney's activities and the amount of time and the charge for each listing. Some of the listings refer to a particular adversary proceeding by case number or by the name of one of the parties involved. Some of the listings provide no reference whatsoever to the adversary proceeding related to the work. The listings are not divided into project categories and, accordingly, no specific amount of fees is requested for any of the separate adversary proceedings. The Application itself provides no information about why any particular adversary proceeding was necessary or whether any benefit to the estate was obtained by the services of the attorney.

In In re Colcord (05-75139), the Trustee has requested $3,401 for services he rendered as an attorney. The Application discloses that the fees are sought for the prosecution of two preference actions which are described only by case number. A chronological billing statement for the period August 21, 2006, through October

26, 2007, is attached. The billing statement is similar to the one provided in the Minich case. No project categories or other breakdown of the fees between the two adversary cases is provided. No information describing the benefit to the estate of the services rendered is contained in the Application.

In In re Clayton (05-75777), the Trustee has requested an award to himself of $3,173 in attorney fees for services related to his prosecution of one preference collection action. The Application has a billing statement attached which contains a chronological listing of the attorney's activities from January 14, 2006, through January 25, 2008. The Application contains no information regarding the benefit to the estate of the services for which compensation is sought.

In In re Howell (05-76742), the Trustee seeks $435 for attorney fees for his firm. The Application states that the fees were incurred in matters related to the sale of a lawn tractor and that "adversary litigation was necessary . . . to sell free and clear." The itemization of time attached to the Application includes time for the preparation of pleadings for the Defendant named in the Complaint. No information is provided as to how any of the attorney's services benefitted the estate.

In In re Renner (05-78254), the Trustee requests the payment to himself of $2,983 for attorney fees. The Trustee's proposed distribution order provides for an additional payment to himself of

-4-

$35.60 in attorney expenses.  The Application states that the fees were incurred for an adversary proceeding to sell real estate and an adversary proceeding to "set aside transfer."  The proceedings are described in the Application by case number only.  The attached billing statement consists of a chronological listing of services rendered for the period January 30, 2006, through April 2, 2007.  Some of the listed activities refer to specific adversary cases by name or number and some do not.  No information is provided about the benefit to the estate of the services for which compensation is sought.

In In re Cowan (06-70466), the Trustee seeks compensation for himself in the amount of $4,522 for attorney fees.  The Application discloses that the Trustee has previously been awarded $1,919 in attorney fees and $109.60 in expenses.  The Application describes the attorney's work by setting forth four adversary proceeding case numbers and stating that three of the cases were to collect preferences and one was to sell property.  A billing statement for the period July 28, 2006, through March 6, 2007, is attached.  Some of the entries on the billing statement refer to specific adversary cases and some do not.  The Application provides no information about the benefit to the estate of the attorney's services.

In In re Davis (06-71158), the Trustee seeks an allowance of $847.50 in attorney fees for his legal work.  The Application makes no representations as to why the services of an attorney were

needed or were of benefit to the estate. The attached itemization of time shows that the Trustee seeks attorney compensation for conducting an examination pursuant to Bankruptcy Rule 2004, reviewing documents, and participating in a telephone conference regarding an objection to claim.

Chapter 7 trustees in the Springfield division of the Central District of Illinois generally file their applications for attorney compensation for themselves or their firms with their Final Reports and Accounts.[1] Both the fee application and the Final Report are then noticed together to creditors. This may well be an efficient way to process these documents and to save time and expense in providing creditors with notice and an opportunity to be heard. However, the practice may also have contributed to a perception that the Court does not review the fee applications and that all requested fees and costs will routinely be allowed.

Decisions from courts throughout the country and, in particular, within the Seventh Circuit have consistently held that bankruptcy courts have an independent duty to review professional fee applications. Cohen & Thiros, P.C. v. Keen Enterprises, Inc., 44 B.R. 570, 574 (N.D. Ind. 1984); In re Wildman, 72 B.R. 700, 705

---

[1] On estate matters for which outside counsel is retained, fee applications are generally filed when the matters are concluded. This Court has asked Chapter 7 trustees to file fee applications contemporaneously with motions to compromise controversies so that the net amount which the estate is expected to receive from any proposed settlement can be determined.

(Bankr. N.D. Ill. 1987). In a recent Opinion, this Court collected the case law on attorney fee applications and served notice on practitioners that, regardless of what the practice in the Springfield division has been over the years, this Court intends to independently review all fee applications and expects substantial compliance with the long-established guidelines for the awarding of fees to professionals. *See* In re Vancil Contracting Inc., 2008 WL 207533 (Bankr C.D. Ill.). Each of the fee applications at issue here was filed after Vancil was published and the trustees were made aware of the Court's intention. Accordingly, it appears that further clarification of this Court's expectations is necessary.

Section 330 of the Bankruptcy Code allows a court to award professional fees to attorneys as "reasonable compensation for actual, necessary services rendered . . ." 11 U.S.C. §330(a)(1)(A). In reviewing fee applications, a court must consider "the nature, the extent and the value" of the legal services rendered and must take into account a variety of factors including the time spent, the rates charged, and the benefit to the estate of the work done. 11 U.S.C. §330(a)(3).

Accordingly, a fee application must provide sufficient information for a court to understand what services were actually provided and to determine that the fees requested are reasonable and the services rendered were necessary and beneficial. To provide that information, the applicant must set forth a detailed

statement listing each service performed, the time expended for the performance, and the fee requested for the service. Fed.R.Bankr.P. 2016(a). Further, a narrative must also be included to explain the necessity of the services. "These detailed applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and the 'why' establishes the 'necessary'." Wildman, 72 B.R. *at* 707. The burden is on the applicant to establish his entitlement to the fees requested, and the application should contain all information necessary to make the determination. In re Lindberg Products Inc., 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). A court reviewing a fee application is not required to search through volumes of pleadings in a bankruptcy case and related adversary proceedings in an attempt to find justification for the legal services rendered and the fees requested. *See* In re Taylor, 66 B.R. 390, 393 (Bankr. W.D. Pa. 1986) (A court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself.")

All of the fee applications currently before this Court have attached exhibits which contain listings of services rendered with notations of the time expended and the fee requested. Some of the listings include entries, however, where multiple services are lumped together. Others contain entries where the detail is inadequate to explain what was actually done. Entries which simply say "draft motion" or "letter to Attorney X" have repeatedly been

-8-

held to be inadequate to support an award of fees. <u>Vancil</u> *at* \*3 (citations omitted). Because this Court will allow amended fee applications in each case, the applicants are admonished to review the guidelines for reporting the detail of services rendered and to follow those guidelines in their amended applications and in all future applications.

The major flaw in all of the fee applications reviewed here is the lack of virtually any narrative explanation regarding the necessity of the legal services rendered or the reasonableness of the fees requested. None of the fee applications provide any discussion of whether the legal services benefitted the estate. All of the fee applications lack information about the success or failure of the activities undertaken. The fee applications which relate to multiple adversary cases provide no breakdown of the fees among distinct projects.

One of the first issues which arises when considering an application for attorney fees filed by a Chapter 7 trustee for himself or his firm is whether the services are truly those for which an attorney was needed. No attorney fees may be allowed for work which is required to be done as part of the trustee's duties. <u>Wildman</u> 72 B.R. *at* 706. This issue is most apparent in the <u>Davis</u> case where the Trustee seeks compensation as an attorney for reviewing documents and participating in an objection to a creditor's claim. Absent a compelling narrative explanation, these

services would generally be denied attorney compensation as duplicative of the work required of the Trustee and compensated by his commission.

Likewise, in establishing necessity, an applicant must show that the legal work was required to obtain a benefit for the estate. In Howell, the limited narrative provided alleges that an adversary proceeding - and presumably the attendant cost - was necessary to sell an asset "free and clear" of liens. But, that is not correct. A motion to sell free and clear of liens may be filed which saves the expense of serving summons and paying the adversary proceeding filing fee. An explanation of why a simple motion to sell free and clear was not filed here should be included in a narrative if the fees are to be justified.

Additionally, the necessity of legal services for which fees are sought must be justified under a cost/benefit analysis, and the narrative included in the fee application should contain sufficient information to make that analysis. Trustees contemplating hiring themselves, their firms, or outside counsel to pursue litigation must weigh the potential cost of legal services against the size of the estate, the potential recovery if successful, and the potential loss if unsuccessful. Wildman, 72 B.R. *at* 707. A trustee and his attorney must undertake the same analysis that attorneys make in all types of cases to determine whether the potential costs and risks of litigation are justified. Many attorneys have had to tell

clients that a case - albeit a solid case on the law and facts - should not be pursued because the potential costs exceed any reasonably-expected recovery. Trustees must have that same heart-to-heart talk with their attorneys - or themselves - before litigation is undertaken on behalf of a bankruptcy estate.

A cursory review of the <u>Colcord</u> and <u>Clayton</u> files would suggest that, at least in hindsight, preference claims were pursued where the amount in controversy did not justify the costs. The same may be true in several of the other cases but, because the fees are not allocated to specific cases or projects, that fact cannot be readily determined. As set forth above, the burden is on the movant to establish the reasonableness and necessity of fees requested. To the extent that it appears that litigation was pursued which was not beneficial to the estate, fees must be denied unless the narrative portion of the fee application establishes a basis for the requested award.

This Court is not prepared to say that a trustee's attorney may not collect fees for pursuing an adversary proceeding to collect money when, in fact, no money was ultimately collected or the amount collected was less than the fees and costs incurred. When such a result occurs, however, the fees must be justified based on the reasonableness and necessity of the endeavor in the first place. This Court has observed that several of the trustees routinely pursue very modest preference claims and accounts

receivable where, even if a favorable result is obtained, the potential benefit to the estate is extremely small. The Code allows pursuit of preferences as small as $600 in consumer cases. 11 U.S.C. §547(c)(8). It is difficult, however, to see how, after the payment of a trustee's fee and even as little as two hours of legal work, litigation of a case of that size can be justified. The margin for the estate, even if all goes well, would generally be less than $100. If a defendant denies the allegations and requests a trial, or if collection problems occur after judgment, that margin would evaporate immediately.

Trustees must use business judgment when determining what cases to bring and deciding how much to spend trying to recover assets for the estate. Although it may be frustrating to a trustee to see that a debtor has made a number of small preferential payments or is owed a number of modest accounts receivable, pursuit of those assets can only be justified where there is a strong likelihood that the estate will benefit.

To assist the Court in determining whether requested fees are reasonable, fee applications should contain separate sections for distinct project categories such as preference actions, asset sales, receivable collections, and the like. <u>Wildman</u>, 72 B.R. *at* 711. For each project category, a narrative should be included explaining the need for the legal services, the results obtained, and the fees and costs requested. The detail for each project

-12-

category should also be set forth separately within the application or by separate exhibits. One running chronological listing combining preference collections, asset sales, and other legal work is not adequate.

In cases involving several preference actions, the detail for all may be included in one exhibit. The narrative, however, should provide a breakdown of the results and costs for each case. This Court cannot determine the reasonableness or necessity of fees simply by considering the aggregate receipts of several adversary cases with a total fee for all. If fees in excess of the amount in controversy are incurred in one collection proceeding, those fees do not become more reasonable or necessary because a substantial return was achieved in another case.

This Court is cognizant of the fact that, in some large cases, dozens of adversary proceedings could be filed which might make calculating time on a per-case basis difficult, if not impossible. In those cases, detail about the overall success of the litigation and a breakdown of the number of cases where funds were recovered versus the cases where there was either no recovery or limited recovery might suffice. That problem is not at issue in any of the cases before the Court, however, and, generally, it would not be a great burden for trustee's attorneys who pursue just two or three adversary cases to be able to tell the Court what it cost to achieve the result obtained in each case. A similar procedure of

breaking out the cost of each separate endeavor should be followed for other types of project categories such as asset sales and receivable collections.

Trustees' attorneys deserve to be reasonably compensated for all necessary legal services rendered.  This Court does not want to deny properly-earned fees based on technical objections to the form of fee applications.  The Court's perception is that, in large measure, when the trustees or their firms serve as attorneys in cases before this Court, their work is accomplished in a professional and efficient manner with the best interests of the estate in mind.  The Court's perception must, however, find support in the reality of properly crafted fee applications which comply with the Bankruptcy Code and Rules.

Separate orders will be entered in each case allowing the filing of amended fee applications consistent with this Opinion.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Orders.

###